# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-367


**CHARLES ALBERT TARVER**

**VERSUS**

**MARY CHANDLER TARVER**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 36,523
HONORABLE LEO BOOTHE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## OSWALD A. DECUIR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Marc T. Amy, Judges.

**AFFIRMED IN PART, REVERSED
IN PART, AND AMENDED.**

**Michael H. Davis**
**Davis & Saybe, LLP**
**2017 MacArthur Drive**
**Building 4, Suite A**
**Alexandria, LA 71301**
**(318) 445-3621**
**Counsel for Defendant/Appellant:**
	**Mary Chandler Tarver**

**Brent S. Gore**
**Attorney at Law**
**111 Serio Boulevard**
**Ferriday, LA 71334**
**(318) 757-4545**
**Counsel for Plaintiff/Appellee:**
	**Charles Albert Tarver**

**DECUIR, Judge.**

This appeal arises from a community partition suit between Mary Tarver and Charles Tarver. Mary Tarver appeals the trial court's judgment. For the reasons which follow, we affirm in part, reverse in part, and affirm as amended in part.

## FACTS

Mary and Charles Tarver were married on September 6, 1980 and filed for divorce on January 12, 2000. During the community, the parties accumulated retirements, built a home, and acquired various other items. Unable to agree on how to divide their property, they petitioned the court for judicial partition. The trial court partitioned the couples' property and Mary lodged this appeal alleging seven assignments of error.

## LASERS RETIREMENT

Mary assigns three errors related to Charles' LASERS retirement. She contends the court erred in failing to find that she was entitled to 50% of both Charles' regular retirement benefit and his DROP account and in failing to include an apportionment of Charles' retirement in the judgment.

In 1973, Charles began working for the Concordia Parish Police Jury. In April of 1977, he started contributing to the Parochial Employees Retirement System. Three years and five months later, in September 1980, he and Mary were married. Three years later, in September 1983, Charles went to work for the Department of Wildlife and Fisheries. At that time, he withdrew his entire six years and five months worth of accrued retirement contributions from the Parochial Employees Retirement System. Of the $7,644.64 he received, $4,070.77 represented his separate property for the three years and five months of contributions made prior to his marriage. The remaining $3,573.87 was for the three years of contributions made after his marriage

and, therefore, was community property. Charles asserts that the funds were used in building the family home, while Mary asserts a satellite dish was purchased.

In October 1990, Charles repurchased the six years and five months of retirement time he had withdrawn in 1983. He also purchased an additional three years and seven months, representing the time between 1973 when he started work with the Police Jury, and April 1977, when he began contributing to the retirement system. This purchase of 10.11 years for $10,288.98 was made with community funds (it appears this should have been $13,288.98 based on a calculation error on LASERS 10/30/90 invoice). Charles entered DROP in February of 1998 and left DROP in February 2001. The Tarvers filed for divorce on January 12, 2000 and were divorced on May 30, 2001.

Based on these facts, the trial court concluded that the 10.11 years repurchased in 1991 were not to be included in dividing Charles' retirement. The court applied the same deduction in calculating the division of DROP funds. In addition, the court's reasons for judgment reflect an allocation of the remaining retirement fund but the judgment is silent with regard to these funds.

Mary assigns error to all of these conclusions. We agree.

At the outset, we note that the trial court offset the original withdrawal of funds from the Parochial Employees Retirement System against the subsequent repurchase. Had the funds been deposited into a retirement account, that might have been an appropriate procedure, however, since the funds were used for the benefit of the community and only a portion were separate funds, we find the issue is one of reimbursement of co-mingled separate funds. Accordingly, we will address it outside the retirement calculation.

Mary relies on *Lodrigue v. Lodrigue*, 01-1630 (La.App. 3 Cir. 05/08/02), 817 So.2d 466, *writ denied*, 02-1604 (La. 10/4/02), 826 So.2d 1124, in asserting that she is entitled to credit for retirement time purchased with community funds during the community even if the retirement credits were earned prior to the marriage. While Charles asserts that *Lodrigue* dealt with military time and municipal retirement, he fails to assert how these differences form a basis for distinguishing the case at bar. Accordingly, we find that all of Charles' retirement credits were either earned or repurchased during the community with community funds. Therefore, the trial court erred in excluding the repurchased time in calculating the division of Charles' retirement funds.

We amend the trial court judgment to provide that Mary is entitled to one-half of Charles' past and future LASERS retirement benefits and one-half of his DROP account.

## VALUATION OF FAMILY HOME

Mary next contends that the trial court erred in placing a value of $70,000.00 on the family home. We disagree.

The trial court was presented with appraisals by experts for both parties and arrived at a figure that fell between the two values presented. The trial court's valuation of property in a community property partition may only be reversed for an abuse of discretion. *Sheridon v. Sheridon*, 03-103 (La.App. 3 Cir. 2/4/04), 867 So.2d 38. We find no abuse of discretion in the valuation of the family home in this case.

## PARENTAL LOAN

Mary next contends that the trial court erred in failing to recognize the community debt to Mary's parents finding that it had prescribed. We agree.

3

A party must specifically plead the affirmative defense of prescription. La.Civ.Code art. 3452 and La.Code Civ.P. art. 927(B), explicitly, prohibit courts from supplying any objection or plea of prescription. We find no plea of prescription asserted by Charles. The trial court erroneously supplied the plea and found the debt had prescribed and, therefore, did not reach the issue of whether the debt was proven.

To prove a debt in excess of $500.00, which has not been reduced to writing, requires a witness and proof of corroborating circumstances. *Bridges v. Bridges*, 96-1191 (La.App. 3 Cir. 3/12/97), 692 So.2d 1186. In the present case, both Mary and her parents testified regarding the existence of the loan. In addition, Mrs. Chandler kept a ledger of disbursements and payments as well as copies of the disbursement check. Finally, the record reflects that the Tarvers made consistent payments over an extended period until 1997. Under these circumstances, we find the evidence sufficient to prove the existence of a community debt of $13,000.00 owed to the Chandlers. Mary has made $2,050.00 in post termination payments on this debt and is therefore entitled to reimbursement of $1,025.00 from Charles.

## MOVABLES

Mary contends that the trial court erred in failing to find certain movables were her separate property. We disagree.

We find no error in the trial court's conclusion that Mary failed to overcome the presumption of community with regard to the disputed movables. La.Civ.Code art. 2340. This assignment has no merit.

## REIMBURSEMENT FOR HOME IMPROVEMENT

Mary contends the trial court erred in awarding Charles reimbursement for a deck and pool liner, etc. for the family home. We agree.

> Expenses incurred between the termination of the community and partition of the community are awarded only when the party claiming

4

reimbursement can prove that the work was necessary and that such work enhanced the value of the property. *Kline v. Kline*, 98-1206, p.5 (La.App. 3rd Cir.2/10/99), 741 So.2d 670, 672. Between the termination of a community property regime and partition, the spouse in possession of former community property has a duty to preserve the property in the manner in which it was always kept. *See Norman v. Norman,* 99-2750, pp.11-12 (La.App. 4th Cir. 7/12/00), 775 So.2d 18, 25.

*Knighten v.Knighten*, 00-1662 (La.App. 1 Cir. 9/28/01), 809 So.2d 324, 328.

In the present case, there was no evidence presented to suggest a deck and pool liner were necessary. Moreover, the evidence with regard to enhanced value indicated a loss on the project. Under these circumstances, we find that the trial court erred in ordering the payment of reimbursement to Charles.

However, returning to the issue of Charles' entitlement to reimbursement for the $4,070.77 of his separate retirement funds withdrawn in 1983, we find the evidence is sufficient to establish that the funds were used for the benefit of the community. Accordingly, Charles is entitled to reimbursement.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and affirmed as amended in part. All costs of these proceeding are taxed to appellee, Charles Tarver.

**AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.**