# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-2546
_____

DAVID MICHAEL MARTIN, Former
Husband,

    Appellant,

    v.

DAWN TURNER MARTIN, Former
Wife,

    Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
Michael A. Flowers, Judge.

June 20, 2019

WOLF, J.

The former husband challenges a final judgment of dissolution of marriage. He raises four issues regarding the distribution of his pension. We find his claim seeking an offset for amounts he would have received in social security benefits if he had not participated in this particular type of federal pension plan does not have merit and affirm without further comment. *Johnson v. Johnson,* 726 So. 2d 393, 394-96 (Fla. 1st DCA 1999). The husband also claims that a portion of his pension attributable to time he worked for the federal civil service prior to marriage was nonmarital property. Appellant forfeited any value in this service time when he left civil service and cashed out his

retirement benefits, and he failed to purchase those years of service when he became reemployed with the government. Thus, we find no error in this regard. We affirm without discussion the court's award of a lump sum to the former wife for her share of appellant's retirement benefits that she was owed during the pendency of dissolution proceedings.

We find one issue merits discussion - whether the trial court erred in finding a portion of appellant's pension that was attributable to a period of military service prior to the parties' marriage was marital because those years of service had no retirement value until they were "purchased" with marital funds during the marriage to apply towards appellant's pension. While we affirm as to this issue, we address it in this opinion because there is no Florida case directly on point.

FACTS

During an evidentiary hearing the parties presented evidence pertaining to the amount and nature of appellant's pension. Prior to the marriage, appellant worked for the military for 8 years, 2 months, and 25 days. He then worked for the federal civil service for 5 months and 6 days prior to the marriage, and he continued to work for the civil service after the marriage for just over 4 years. Appellant left that position and cashed out all of the retirement benefits that he had accrued with the civil service. Shortly thereafter, he returned to civil service where he worked for another 24 years, and he retired prior to dissolution.

While married, during his second tenure with civil service, appellant used $9,866 of marital funds to "purchase" his years of military service so they would count towards his civil service pension. Appellant testified that he and the former wife jointly agreed to pay the $9,866, which they paid in installments over an 8-year period prior to his retirement, because it would be better for both of them down the road financially. Purchasing those years did not increase appellant's regular monthly contribution towards his pension.

Appellant conceded that he would not have been eligible to receive any retirement benefits from the military based on his 8

2

years of service. The former wife's accounting expert explained appellant would have been required to serve in the military for 20 years to receive military retirement benefits. Thus, the expert testified those 8 years of service had "no value" for purposes of retirement until appellant purchased them to apply towards his civil service retirement.

Purchasing those years resulted in an increase in appellant's pension of $908 a month for the rest of his life, according to the former wife's expert.

The trial court found the former wife was entitled to 50% of appellant's pension, reasoning that because marital funds were used to purchase the military years of service, they became a marital asset.

### THE MILITARY SERVICE

"We review de novo a trial court's legal conclusion that an asset is marital or nonmarital." *Landrum v. Landrum*, 212 So. 3d 486, 487 (Fla. 1st DCA 2017), reh'g denied (Mar. 24, 2017).

Appellant argues the trial court erred in finding the portion of his pension attributable to his years of premarital military service was marital property. He relies on the well-established principle that retirement benefits accrued prior to marriage are nonmarital. The former wife argues the court reached the correct result based on the equally well-established principle that if marital funds are used to add value to a nonmarital asset, that added value is marital.

There is no Florida case law directly on point. Other jurisdictions are split on the issue, but a slight majority have found years of premarital employment that are "purchased" during the marriage using marital funds are a marital asset.

### *Case Law from Other States*

Most jurisdictions, including Pennsylvania, have found that when marital funds are used to purchase credit for premarital years of employment, the enhanced value to the pension plan is marital. These courts primarily relied on the rationale that

3

property acquired during a marriage is marital property. *See King v. King*, 481 A.2d 913, 918 (Pa. 1984) (determining portion of marital pension attributable to years of premarital service purchased during the marriage was marital property due to the "presumption that all property acquired during marriage is marital property"); *Lodrigue v. Lodrigue*, 817 So. 2d 466, 470 (La. Ct. App. 2002), writ denied, 2002-1604 (La. 10/4/02), 826 So. 2d 1124 (concluding premarital military service purchased during the marriage with marital funds was marital because under Louisiana law "property acquired with community things is considered community property"); *Tarver v. Tarver*, 916 So. 2d 1222, 1224 (La. Ct. App. 2005) (same result relying on *Lodrigue*); *Matter of Marriage of Mahaffey*, 773 P.2d 806, 808 (Or. Ct. App. 1989) ("Although the purchased four year credit [towards the marital pension plan] accrued as a result of his military service before the marriage, the credit was acquired during the marriage and is a marital asset.").

Even where it was apparently unnecessary for the husband to purchase his premarital military years of service to receive credit for them through his civil service pension, a Missouri appellate court found those years of credit were marital because the husband "would not have been entitled to a civil service pension if he had not worked as a civil service employee [during the marriage]. The fact that the amount of the pension may be increased by virtue of the circumstance of his previous military service does not affect the status of the civil service pension as marital property." *In re Marriage of Burns*, 903 S.W.2d 648, 651 (Mo. Ct. App. 1995).

New York and California have reached the opposite result. A New York appeals court found it was well-established under New York law that "[w]hether and to what extent a pension benefit is marital or separate property is determined by the time period in which the credit for the pension was earned." *Valachovic v. Valachovic*, 9 A.D.3d 659, 660, (N.Y. App. Div. 2004). Thus, it concluded premarital years of employment purchased during the marriage were nonmarital property. *Id.*

California also found the value of such purchased years of premarital military service was nonmarital in *In re Marriage of*

4

*Green*, 302 P.3d 562 (Cal. 2013). The Supreme Court of California emphasized that the value added to the pension in that case far exceeded the cost of purchasing those years of service. *Id.* at 568. The court also noted the California law permitting the purchase of military years of service instructed "that this military service is to be credited 'as it would be credited if the member had been in state service during' that service," which demonstrated a "legislative intent to fully credit persons for their military service." *Id.* at 567. Thus, it found the trial court did not abuse its discretion in awarding the former wife only half of the marital funds used to purchase those years of employment, plus interest. *Id.* at 564, 570.

We find California's rationale is inapplicable in Florida for two reasons. First, it ignores the presumption laid out in Florida law that assets acquired during the marriage are presumed to be marital. Second, it overlooks the fact that, as noted by the Missouri appellate court, the cost to purchase the premarital employment was not limited to the expense of marital funds. *In re Marriage of Burns*, 903 S.W.2d at 651. The former husband would not have had the option to purchase his military years of service unless he worked as a civil service employee during the marriage. He made this purchase during his second tenure with civil service, which occurred entirely during the marriage.

*Florida Law*

Our analysis of Florida law begins with statutes relating to the definition of marital assets and distribution of retirement plans. Section 61.075(6), Florida Statutes, defines marital assets to include assets acquired during marriage:

(a)1. "Marital assets and liabilities" include:

a. Assets acquired and liabilities incurred during the marriage . . . .

b. The enhancement in value and appreciation of nonmarital assets resulting from . . . the contribution to or expenditure thereon of marital funds . . . .

5

Importantly, subsection (8) of the same statute states all assets acquired during the marriage are presumed to be marital assets:

> All assets acquired and liabilities incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities. Such presumption is overcome by a showing that the assets and liabilities are nonmarital assets and liabilities. . . .

§ 61.075(8), Fla. Stat.

Portions of chapter 61 deal specifically with the distribution of pensions. Section 61.075 states that a pension "accrued during the marriage" is marital property. § 61.075(6)(a)1.e., Fla. Stat. (defining "marital property" as including "[a]ll vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs"); *see also* § 61.076(1), Fla. Stat. ("All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs are marital assets subject to equitable distribution.").

Based upon these statutes, the years of military service in this case were originally nonmarital. *Brathwaite v. Brathwaite*, 58 So. 3d 398, 401 (Fla. 1st DCA 2011) (finding the portion of the former husband's retirement attributable to 3 years he spent in the Navy prior to marriage was nonmarital). Thus, if nonmarital funds were utilized to purchase these years of service, they would remain nonmarital. *Scott v. Scott,* 888 So. 2d 81, 82-83 (Fla. 1st DCA 2004) (holding past service years purchased with nonmarital assets remain nonmarital).

Neither statutory law nor case law specifically address the situation we have in this case where marital funds were used to purchase *nonvested years of service.* It is well-established, however, that if an asset is purchased during a marriage, there is a presumption that the asset is marital. § 61.075(8) Fla. Stat. In construing a statute similar to section 61.075(8), the

6

Pennsylvania Superior Court concluded that years of service purchased during the marriage were marital property regardless of whether they were served prior to or during the marriage due to the statutory "presumption that all property acquired during marriage is marital." *King*, 481 A.2d at 918.

Similarly, this court has determined that a party claiming that an asset acquired during the marriage is nonmarital bears the burden of overcoming the presumption. *Smith v. Smith*, 971 So. 2d 191, 193 (Fla. 1st DCA 2007). The mere fact that preparations or contractual obligations occurred prior to the marriage does not preclude an asset from being considered marital where the actual closing on the property occurred during the marriage. *See Holmes v. Holmes*, 613 So. 2d 511, 513 (Fla. 3d DCA 1993) (concluding that the marital home was a marital asset, although the down payment was provided entirely by the wife who had title in her name only, where purchase of the residence occurred several days after the parties married.).

The Second, Third, and Fourth Districts have held that "[t]he burden is on the pensioner 'to prove whether some portion of [the] pension benefits accrued prior to marriage and therefore should not be included as a marital asset.'" *Julia v. Julia*, 263 So. 3d 795, 798–99 (Fla. 4th DCA 2019) (quoting *Childers v. Childers*, 640 So. 2d 108, 109 (Fla. 4th DCA 1994)). *See also Jahnke v. Jahnke*, 804 So. 2d 513, 517 (Fla. 3d DCA 2001) (finding the pension owner was required to prove that some portion was paid for using premarital contributions); *Reyher v. Reyher*, 495 So. 2d 797, 800 (Fla. 2d DCA 1986) ("In order to exclude any premarital contributions, the 'owner' must prove the value of the premarital contributions (and appreciation of that value, if any).").

In this case the asset, prior years of service, was acquired totally utilizing marital funds based on the parties' joint decision to make 8 years of installment payments because it would be better for the couple financially in the future.*

---

* Appellant testified that money was tight during their marriage, ultimately resulting in a foreclosure. The former wife agreed that because appellant had a superior ability to earn

7

The option to purchase and the decision to purchase the prior service arose out of appellant's second tenure with civil service, which occurred entirely during the marriage. The only testimony concerning the value of his prior military service was that it had zero value for retirement purposes. Thus, appellant failed to overcome the presumption that this asset purchased with marital funds was marital property. We affirm the trial court's determination.

LEWIS and WETHERELL, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Michael T. Webster of Michael T. Webster, P.A., Shalimar, for Appellant.

Curtis W. Brannon of Curtis W. Brannon, PA, Crestview, for Appellee.

_____

income and retirement benefits, she would stay home with the couple's seriously disabled daughter, who ultimately died. The former wife also worked outside of the home, though she was not able to accrue retirement benefits. The "marital teamwork" involved in the parties' decision to make 8 years of installment payments to purchase those years despite limited finances further indicates a desire of the parties that this purchase be considered a marital asset.