# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 06-77

CONNIE DURANT YOUNG

VERSUS

STEPHEN HARDY YOUNG

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2003-261
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

**REVERSED AND REMANDED IN PART;
AFFIRMED IN PART.**

Kenneth Perrell Fuselier
P. O. Box 652
Oakdale, LA 71463
Telephone:  (318) 335-2951
COUNSEL FOR:
    Defendant/Appellant - Stephen Hardy Young

John Craig Jones
131 Highway 165 South
Oakdale, LA 71463
Telephone:  (318) 335-1333
COUNSEL FOR:
    Plaintiff/Appellee - Connie Durant Young

**Kelly Perrodin Tate**
**1212 East Street**
**Post Office Drawer 280**
**Mamou, LA 70554-0280**
**Telephone: (337) 468-5271**
**COUNSEL FOR:**
      **Defendant/Appellant - Stephen Hardy Young**

THIBODEAUX, Chief Judge.

Defendant, Stephen Hardy Young (Mr. Young), appeals the trial court's judgment in this community property partition dispute which classified Mr. Young's social security disability benefits as community property, and not his separate property. Mr. Young also appeals the trial court's order that Plaintiff, Connie Durant Young (Mrs. Young), receive reimbursement from Mr. Young to equalize an unequal net distribution of assets and liabilities in the form of allocations of moveable property, instead of ordering him to pay her an equalizing sum of money. Lastly, Mr. Young appeals the trial court's classification of a majority of the monies in a Hibernia bank account as community property. For the following reasons, we reverse and remand in part, and affirm in part the trial court's judgment. Social security disability benefits are the separate property of Mr. Young based on the Supremacy Clause of the United States Constitution and the anti-attachment provision contained with the Federal Social Security Act, 42 U.S.C. §§ 402 et seq.; La.R.S. 9:2801 requires an equalizing sum of *money*, not a transfer of ownership of other tangible property, to equalize an unequal distribution of community assets; and, the characterization of the Hibernia savings account as community property was a factual determination which was well-supported by the trial court.

I.

## **ISSUE**

There are three main issues raised in this appeal:

1. whether federal social security disability benefits are the separate property of the recipient;

2. whether under La.R.S. 9:2801(A)(4)(d) an unequal distribution of assets and liabilities in a community property partition can be cured by ordering anything other than an "equalizing sum of money;" and,

3. whether the trial court committed manifest error by characterizing most of the funds in a savings account which Mr. Young claimed was created solely with his separate monies as community property.

## II.

## FACTS

Following a divorce, Mr. and Mrs. Young, pursuant to a petition to partition community property, submitted detailed descriptive lists to each other and to the trial court.

Hearings on the partition petition were held. While the former spouses agreed on the classification of most of the assets listed by each of them in their descriptive lists, Mr. Young disagreed that social security disability benefits were assets belonging to the community, and not his separate property. When the trial court divided the assets and liabilities of the former community, there was an imbalance in terms of the valuation of the property allocated to each former spouse in favor of Mr. Young. There was also disagreement on the characterization of funds in a savings account at Hibernia Bank.

The trial court first determined that social security disability benefits in the amount of $17,386.00 that were paid to Mr. Young in 1996 were to compensate him for lost wages, and were therefore assets belonging to the community, not to Mr. Young separately. Then, after allocating all of the assets, the trial court found that the property assigned to Mr. Young was worth $18,999.99 more than the property allocated to Mrs. Young. The trial court determined that in order to equalize this

unequal distribution, the ownership of three items of Mr. Young's separate property should be transferred to Mrs. Young. Those items were a camp located in Tioga, Louisiana valued at $6,000.00, a Pontiac Grand Am valued at $1,500.00, and a 'four-wheeler' valued at $2,000.00. The trial court then ordered Mr. Young to execute whatever documents were necessary to accomplish the transfer of ownership of these items. Finally, the trial court also determined that $15,613.54 of the $17,042.95 deposited in a Hibernia Bank savings account was community property, not the separate property of Mr. Young.

III.

## LAW AND DISCUSSION

### Standard of Review

Appellate courts review trial court findings of fact under the manifest error, clearly wrong standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Unless the trial court committed manifest error or was clearly wrong in its findings of fact, those findings will not be disturbed on appeal. *Aymond v. Aymond*, 99-1372 (La.App. 3 Cir. 3/1/00), 758 So.2d 886. Determinations of what is community versus what is separate property are findings of fact. *Biondo v. Biondo*, 99-890 (La.App. 1 Cir. 7/31/00), 769 So.2d 94. The standard of review for mistakes of law by the trial court requires the appellate court to engage in a *de novo* review of the entire record. *Rosell*, 549 So.2d 840.

> Appellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. *Phoenix Assur. Co. v. Shell Oil Co.*, 611 So.2d 709 (La.App. 4 Cir. 1992). If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court. *Kem Search, Inc., v. Sheffield*, 434 So.2d 1067 (La.1983).

3

*Ducote v. City of Alexandria*, 95-1269, p. 2 (La.App. 3 Cir. 7/17/96), 677 So.2d 1118, 1120.

Therefore, when the trial court has made an error in the interpretation or application of law, the appellate court must review the record in its entirety *de novo* and render a judgment on the merits. *Rosell*, 549 So.2d at 850 n.2.

**Does the Supremacy Clause of the United States Constitution Bar a State Court from Characterizing Social Security Disability Benefits as Community Property Based on the Anti-Attachment Provisions Found in the Federal Social Security Act, 42 U.S.C. §§ 402 et seq.?**

A state court's characterization of community property is based on that court's interpretation and application of state law. However, the anti-attachment provisions of the federal law governing social security disability benefits supersede state law, making the state court judgment a legal issue subject to *de novo* review by an appellate court.

> "Where one or more trial court legal errors interdict the fact finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the reviewing court should make its own independent de novo review and assessment of the record." *Campo v. Correa*, 01-2707, p. 10 (La.2002), 828 So.2d 502, 510 (citing *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, 746-47).

*Rivera-Santos v. Rivera-Santos*, 03-667, p. 5 (La.App. 3 Cir. 12/10/03), 862 So.2d 480, 483.

Article VI, Paragraph 2 of the United States Constitution is known as the Supremacy Clause. It states:

> This Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the authority of the United States, shall be Supreme Law of the land; and the Judges in every state shall be bound thereby, anything in the Constitution or Laws of any state to the contrary notwithstanding.

U.S. CONST. art. VI, cl. 2.

The Supremacy Clause establishes the Constitution, federal statutes, and United States treaties as "the supreme law of the land." It requires state judges to uphold federal laws, even if state laws or constitutions are in conflict with those federal laws or the Constitution. *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802 (1979), *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 93 S.Ct. 590 (1973).

While federal law generally steers clear of attempting to control the arena of family law, when a state's family statute conflicts with a federal statute, the Supremacy Clause is the basis for determining whether Congress intended for state law to be pre-empted. *Hisquierdo*, 439 U.S. 572. The United States Supreme Court has narrowed down the inquiry to two questions, "whether the [state] right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." *Id*. at 583.

The Social Security Act contains what is called an anti-attachment clause which prevents the attachment of monies meant to aid the beneficiary receiving them. The anti-attachment provision goes further than just prohibiting the attachment of social security disability benefits; it also protects these benefits from garnishment, levy, bankruptcy, insolvency, or other legal processes:

> Section 407. Assignment; amendment of section
>
> (a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and **none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process**, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407 (2002) (emphasis added).

In *Hisquierdo*, the United States Supreme Court determined that Railroad Retirement Act of 1974 benefits may not be divided under state community property laws. *Hisquierdo*, 439 U.S. 572. The decision was based on an analysis of the anti-attachment provisions of the Railroad Retirement Act, which uses language that is identical to the anti-attachment provision of the Social Security Act. *Compare* 45 U.S.C. § 231m, *and* 42 U.S.C. § 407. The Court stated that one of the main reasons for pre-emption was that the federal statute was for "a specified beneficiary protected by a flat prohibition against attachment . . . ." *Hisquierdo*, 439 U.S. at 582.

Section 407 of the Social Security Act was created by Congress to ensure that the benefits given to a specific beneficiary actually reach that beneficiary. "It pre-empts all state laws that stand in its way. It protects the benefits from legal process '[n]otwithstanding any other law . . . of any State.'" *Id*. at 584. Congress amended the Social Security Act to allow benefits to be used to satisfy both child support and alimony obligations. 42 U.S.C. § 659(a). However, specifically excepted from the definition of alimony was "any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B)(ii).

The third circuit has had only one opportunity to adjudge the applicability of Louisiana community property law to social security disability benefits. It decided that such benefits were not subject to classification as community property, but did not offer a legal basis for such a classification. *Lambert v. Lambert*, 480 So.2d 784 (La.App. 3 Cir. 1985). The Louisiana First Circuit Court of Appeal has expounded upon whether the Supremacy Clause prevents state community property law from reaching benefits under the Social Security Act.

6

In *Thibodeaux v. Thibodeaux*, 97-1297 (La.App. 1 Cir. 5/15/98), 712 So.2d 1024, the first circuit explained why the Supreme Court in *Hisquierdo* applied the Supremacy Clause to benefits protected by anti-attachment provisions in federal benefits statutes:

> Thus, the [C]ourt stated that it was logical to conclude that Congress thought that a family's need for support could justify garnishment, even though it deflected other federal benefit programs from their intended goals, but that community property claims, which are not based on need, could not do so. *Hisquierdo*, 439 U.S. at 587, 99 S.Ct. at 811.

*Id*. at 1027.

The trial court erroneously classified Mr. Young's social security disability benefits as community property as the federal statute awarding those benefits specifically disallows them from being subject to such a state legal process. The Supremacy Clause of the United States Constitution mandates that the goals of the federal law supersede the goals of the state law.

Therefore, we reverse the trial court's judgment that the $17,386.00 paid to Mr. Young by the Social Security Administration as social security disability benefits were community property. Those funds are the separate property of Mr. Young. However, Mr. Young claims that most or all of these funds were used to purchase the home on Pine Lane, in Oakdale, Louisiana. Both parties agree that the purchase price of the Pine Lane home was $24,464.00.

We remand to the trial court the issue of whether and how to reallocate assets and monies based on the question of whether Mr. Young is owed any reimbursement for the use of his separate funds to purchase the Pine Lane home, which has already been classified by the trial court as a community asset, or whether Mrs. Young is owed a reimbursement to equalize the sums partitioned between the parties, subject to the allocation and assignment principles stated in La.R.S. 9:2801.1.

7

Specifically, the trial court must decide if Mrs. Young should have property allocated or assigned to her ownership from the bundle of community property equal in value to Mr. Young's social security disability benefits prior to the division of the rest of the community property. La.R.S. 9:2801.1. The reallocation or reassignment of benefits to Mrs. Young is not mandatory; the trial court shall note that La.R.S. 9:2801.1 allows the court to do so in its discretion when the effected benefits are social security benefits.

### Does La.R.S. 9:2801 Allow For Only an "Equalizing Sum of Money" to Cure an Unequal Net Distribution of Assets as Part of a Community Property Partition?

When a trial court interprets and applies state statutes, any error that is made would fall under the *de novo* standard of review. *Ducote*, 677 So.2d 1118. After dividing and allocating community assets to Mr. Young and to Mrs. Young, the trial court found that there was an imbalance in the value of those assets. Mr. Young had been allocated community property totaling $40,394.57. Mrs. Young was allocated community property totaling $21,394.58, creating a difference of $18,999.99 in property valuation in Mr. Young's favor. Louisiana Revised Statutes 9:2801(A)(4)(d) instructs the trial court how a net imbalance in the distribution of community assets and liabilities should be equalized:

> (d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an **equalizing sum of money**, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.

(Emphasis added).

We believe that the plain language of the statute states clearly that the equalization must be made by payment of a sum of money. While the trial court has the discretion to order that such sums be secured through mortgages or liens on a party's separate property, the statute does not go so far as to give the trial court the discretion to make a party actually give up their ownership rights to that separate property.

Requiring Mr. Young to give up ownership of his separate property was legal error on the part of the trial court, and we now rescind that part of the trial court judgment. We remand the issue of equalizing the unequal net distribution of assets back to the trial court so that it can be accomplished within the parameters of La.R.S. 9:2801(A)(4)(d).

### Did the Trial Court Commit Manifest Error in its Judgment that $15,613.54 of the $17,042.95 that was in the Hibernia Savings Account was Community Property?

An appellate court may not overturn the factual findings of a trial court unless those findings are clearly wrong or manifestly erroneous. *Rosell*, 549 So.2d 840 (La.1989). "If a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong." *Aymond*, 758 So.2d at 889, citing *Stobart v. State, Through Dep't of Transp.*, 617 So.2d 880, 882 (La.1993). In the context of a case based on a petition to partition community property, "a trial court's findings regarding the nature of the property as community or separate is a factual determination subject to manifest error review." *Ross v. Ross*, 02-2984, p. 18 (La. 10/21/03), 857 So.2d 384, 395.

During the course of the two days of hearings in this case, the trial court heard copious testimony from both Mr. Young and Mrs. Young concerning the origin

of monies that were deposited into the Hibernia Bank savings account. Some of the money came from Mrs. Young's earnings, tax refunds, interest payments, among other sources, all of which are undeniably community property. In its judgment, the trial court meticulously identified all of the sources of those funds. There is voluminous testimony and other evidence in the record which supports the conclusion of the trial court that $15,613.54 of the $17,042.95 that was in the account was community property. Therefore, the trial court's judgment on this issue is affirmed.

IV.

## CONCLUSION

When a trial court interprets or applies the law, the judgment rendered will be subject to a *de novo* review by the appellate court. When the trial court declared that Mr. Young's social security disability benefits were community property, and not his separate property, an error of law was committed that we now reverse. Mr. Young's social security disability benefits are his separate property and not subject to state community property law based on the anti-attachment provision contained within the Social Security Act, and the protection of the supremacy of federal law over state law embodied in Article VI, clause two of the United States Constitution, the Supremacy Clause.

The trial court also committed an error of law when Mr. Young was ordered to transfer ownership of items of his separate property to Mrs. Young in order to equalize an unequal net distribution of property. The court was forbidden from accomplishing the equalization by any other means than those enunciated in the statute: an equalizing sum of money. La.R.S. 9:2801(A)(4)(d).

The trial court must now re-determine the distribution of assets and liabilities between Mr. Young and Mrs. Young based on our judgment that Mr.

Young's social security disability benefits in the amount of $17,386.00 that had been classified as community property are actually Mr. Young's separate property. If any equalization is owed by one party to the other, it must be accomplished via an equalizing sum of money, and not through the mandatory transfer of ownership of separate property.

The trial court is affirmed in the factual determination that the majority of funds remaining in the Hibernia Bank savings account are community property. There is ample evidence in the record from which a reasonable trier of fact could have reached that conclusion, and therefore the trial court did not commit manifest error, nor was that determination clearly wrong.

Mrs. Young shall pay two-thirds of the costs of this appeal and Mr. Young is assessed one-third of the appeal costs.

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART.**